**AFFIRM; and Opinion Filed November 29, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01003-CR

**THOMAS WILSON, III, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-15-75982-Q**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Schenck

Appellant Thomas Wilson, III pleaded guilty to the offense of murder and a jury assessed his punishment at 70 years' confinement. In a single issue, appellant contends he received ineffective assistance of counsel because trial counsel did not obtain a ruling on her objection to certain statements the prosecutor made during closing argument, thus failing to preserve an issue for appellate review. We overrule appellant's issue and affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### PROCEDURAL BACKGROUND

The State charged appellant with the murder of his neighbor Nathan Tonolini. TEX. PENAL CODE ANN. § 19.02. Murder is a first-degree felony generally punishable by confinement for five to 99 years or life and a fine not to exceed $10,000. *Id.* §§ 12.32, 19.02(c). Appellant was

arraigned and pleaded guilty. He did not accept the State's plea-bargain offer of 45 years' confinement and did not waive his right to have his sentence determined by a jury. *See* TEX. CODE CRIM. PROC. ANN. art. 26.14. Appellant requested leniency in sentencing, urging that he suffered from a psychotic disorder that caused him to believe Tonolini was part of a vast conspiracy to harm him and led him to cause Tonolini's death. The State, on the other hand, implored that the maximum sentence should be imposed, urging that it was appellant's methamphetamine use that caused the delusions that lead to the murder of Tonolini, rather than an independent psychosis. The jury assessed punishment at 70 years' confinement and imposed a fine of $10,000. Appellant filed a motion for new trial arguing the verdict is contrary to the law and evidence. The trial court overruled appellant's motion. This appeal followed.

### FACTUAL BACKGROUND

Appellant began to have delusions shortly after a relationship break-up in 2010. He began using methamphetamine around that time. On December 27, 2012, appellant voluntarily admitted himself into Green Oaks Hospital reporting he was suffering from to depression. The hospital evaluated appellant and concluded he had a drug-induced psychotic disorder with hallucinations. The hospital discharged appellant with follow-up instructions. Appellant did not follow the instructions and he was re-admitted to Green Oaks Hospital on May 28, 2013, this time involuntarily. He was again diagnosed with drug-induced psychotic disorder with hallucinations and discharged as he had been before. In August 2013, police officers were dispatched to appellant's residence in response to a report of gunfire. They discovered appellant had discharged a firearm inside his condominium unit, believing people were watching him from inside the walls, and confiscated over a dozen firearms. No one was injured during that episode and appellant was admitted to Green Oaks Hospital again for evaluation. As before, the hospital concluded that appellant suffered from a drug-related mental disorder. He was discharged with follow-up

instructions that he did not follow. Appellant took an early retirement from his employment in 2014 because of his methamphetamine addiction and paranoia.

On July 15, 2015, police officers were dispatched to appellant's condominium complex in response to a random gunfire call. After they entered the complex, the call was changed to a shooting. They discovered appellant was the shooter and that Tonolini was the victim. Appellant shot Tonolini eleven times. The projectiles entered Tonolini's head, chest, flank, upper back, and extremities resulting in perforations in his brain, liver, scapula, and intestines. Appellant reported he believed that, as a member of the condominium complex's homeowner's association's board of directors, Tonolini had access to the maintenance key to his unit and that he had conspired with others to permit access to his unit in order to place listening devices and perform other nefarious acts. Appellant believed Homeland Security and the police were also part of the alleged conspiracy. At the time of the shooting, appellant was delinquent on the payment of his homeowner's association dues and the association was in the process of foreclosing on his unit. It is unknown whether appellant was aware of the impending foreclosure at the time of the shooting.

Dr. Kristi Compton, a psychologist, conducted a forensic evaluation of appellant in 2016, after appellant had been incarcerated for nine months and then again approximately four months later. During her first meeting with appellant, Dr. Compton conducted psychological and malingering tests which showed appellant lacked understanding about his psychological functioning, and revealed some depressive symptoms and no indication that appellant was faking a mental illness. During their second meeting, appellant self-reported that his delusions began shortly after a significant break-up in 2010 and before he began using methamphetamine, and continued after he was incarcerated, at which time he presumably was not using drugs. Dr. Compton was of the opinion that although methamphetamine use contributed to appellant's delusions, she believed appellant had a delusional disorder independent of his drug use because,

according to appellant, the delusions continued after he stopped using drugs. Because appellant reported the delusions were still present, Dr. Compton stated his delusions are more than substance-induced delusions and the State's theory that the delusions were just drug use is not based on science.

## DISCUSSION

Appellant urges his trial counsel rendered ineffective assistance by failing to obtain a ruling on her objection to the State's closing argument. Specifically, he complains about counsel's failure to obtain a ruling on her objection to the following argument:

> So don't be fooled for one second into thinking that this is a disease that suddenly attacked [appellant], and did not let go of his mind. He caused it himself by abusing Meth daily because that's in the records, too. Every single day for years, he used Meth. . . . that one single report of delusions in jail, [Dr. Compton] said that's her only basis for saying that this is some kind of diagnosable disease.

In response to trial counsel's objection that this argument was a "misstatement of the testimony," the trial court responded by stating "[t]he jury will recall the testimony."

To preserve a complaint for appellate review, the defendant must make his legal objection to the trial court, and the trial court must either rule on the objection, or the defendant must object to the trial court's failure to rule on his objection. TEX. R. APP. P. 33.1. Failure to pursue an objection to an adverse ruling forfeits a defendant's right to complain about that error on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). "[T]he most important procedure is to press the specific objection to the point of obtaining an adverse ruling." *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992). General statements and comments by the trial court such as "the jury will recall the testimony," are not considered adverse rulings. *See Ivy v. State*, No. 01-113-00504-CR, 2014 WL 3398352, at *5 (Tex. App.—Houston [1st Dist.] July 10, 2014, pet. ref'd) (mem. op., not designated for publication). Thus, appellant's trial counsel failed to preserve her objection for appeal.

–4–

## I.      Standard of Review

Texas courts apply the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), to resolve ineffective assistance of counsel claims that arise from the punishment phase of a non-capital trial. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). The two pronged standard requires a showing of (1) deficient performance, and (2) prejudice. *Strickland*, 466 U.S. at 687. To show deficiency of counsel, the appellant must show that his counsel's performance deviated from the prevailing professional norms, and to show prejudice, the appellant must prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688-94. The failure of the appellant to prove one prong of the test negates the need to consider the other prong. *Id.* at 697.

To prevail on a claim of ineffective assistance of counsel, the appellant bears the burden of proving by a preponderance of the evidence that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The United States and Texas Constitutions do not provide the right to "errorless counsel or counsel whose competency is judged by hindsight." *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). Therefore, judicial scrutiny of the performance of trial counsel is highly deferential, and a strong presumption attaches that the trial counsel's conduct fell within a wide range of professional conduct. *Strickland*, 466 U.S. at 689. If the record is silent on the issue, the appellate court will not speculate on the reasons underlying the trial counsel's actions. *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex. Crim. App. 2000).

Appellant contends that trial counsel's failure to pursue her objection to an adverse ruling deprived him of effective assistance of counsel during the punishment phase of the trial. However, the record is silent on counsel's reasons for failing to pursue his objection to an adverse ruling.

Because we have nothing before us from which to determine why counsel failed to pursue his objection to an adverse ruling, appellant's allegations of ineffectiveness are not firmly founded in the record, and the record does not affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 813. Accordingly, we hold that appellant has not sustained his burden of proving his ineffective assistance claim by a preponderance of the evidence. We overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

171003F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

THOMAS WILSON, III, Appellant

No. 05-17-01003-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-15-75982-Q.
Opinion delivered by Justice Schenck.
Justices Lang and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of November, 2018.