Opinion issued October 27, 2005 
 
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00979-CR




HECTOR GILEBALDO RUIZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 948465




MEMORANDUM OPINION
          A jury convicted appellant, Hector Gilebaldo Ruiz, of theft of property of
between $20,000 and $100,000 and assessed his punishment at six years in prison and
a $10,000 fine. See TEX. PEN. CODE ANN. § 31.03(e)(5) (Vernon 2005). We
determine whether the evidence was legally and factually sufficient to support
appellant’s conviction for theft and whether appellant was denied effective assistance
of counsel at the guilt-innocence phase of trial. We affirm. 
Facts
          The State presented the following evidence. The complainant, John Parker,
owned five businesses, four of which were involved to varying extents in either the
sale or financing of used vehicles,


 and one of which conducted business that was
personal to Parker.


 In February 2001, Parker hired appellant to work as the manager
of his automobile-dealership businesses. 
          Each time that a customer made a payment on a vehicle, the following
procedure was followed: the paying customer was issued a receipt, and a copy of the
receipt was retained; the payment was placed into a cash box; the payment was
entered electronically onto the computer and manually onto the customer’s file; the
total payments received at day’s end were placed into a safe; a cash-flow statement
(“the daily report”), showing to which Parker business entities payments were to be
attributed, was generated the next morning; the previous day’s payments were then
deposited into the bank accounts of the appropriate Parker business entities;


 bank-deposit receipts were brought back and stapled to the daily report; and, at month’s
end, a monthly report was generated, compiling all of the month’s daily reports. 
From January 2002 to February 2003, appellant was solely responsible for generating
the daily report and for confirming that the previous day’s payments matched up with
the daily report; he also deposited the money from the safe the day after it had been
collected and generated the monthly reports. Although other employees could access
the computer system, only appellant had the security clearance to delete payments
from the daily report. Even Parker did not have this security clearance. Additionally,
although other employees could access the cash box, only appellant and Parker could
access the safe. 
          John Parker Motor’s internal accountant, Mary Beth Smith, noticed that
Parker’s businesses were $2,000 short for the month of February 2003. Examining
each month from January 2002 to February 2003, Smith discovered that funds were
missing from other months, as well. In all, the missing funds totaled $53,621.35. She
discovered that, although the daily reports always matched the daily bank-deposit
receipts, some of the payments recorded in the monthly report did not appear in the
daily reports. That is, it appeared that someone, in order to take cash undetected, had
deleted some of the payment entries when the daily reports were generated and then
had re-entered the deleted entries when the monthly report was generated.
          After discovering the missing cash, Parker asked all of his employees to take
a polygraph test. During his pre-polygraph meeting, appellant, who then no longer
worked for Parker, admitted on a videotaped recording that he had used the scheme
set out above to steal money from Parker, specifically mentioning the amounts of less
than $10,000 and $300, respectively. Appellant never took the polygraph test.
          In November 2003, appellant went to Parker’s office to try to “work this out”
by making “some kind of payment, some kind of restitution.” When Parker informed
appellant that appellant owed him over $50,000, appellant replied that he could not
pay that much; however, appellant never denied that he had taken that sum. 
Moreover, despite making about $39,467 a year while employed by Parker, appellant
admitted to having paid about $23,000 on his mortgage between September 2001 and
February 2003, to having fully paid for a $12,905 car between March 2001 and
October 2002, and to having paid about $6,600 on a truck between September 2002
and February 2003.
          However, at trial, appellant denied having taken any money from Parker. He
also testified that he had never deposited the money for John Parker Enterprises; that
no bank account existed for that entity; that Parker handled all of that entity’s money
after it was deposited in the safe; and that Parker would, from time to time, take up
to $30,000 of that entity’s money to use at the racetrack or for personal matters. 
Appellant also asserted that, in August 2002, Parker had all employees, including
appellant, hide records of John Parker Enterprises before an audit by the Internal
Revenue Service (“I.R.S.”). Appellant claimed that, when he complained about this
to Parker, Parker became upset and that, when appellant quit months later because of
this alleged fraud, Parker began threatening him and his family. Appellant claimed
that he confessed only because Parker had instructed him to do so and because he
feared Parker’s retaliation. Appellant also testified that “every single employee” and
Parker knew how to work the computer database; that everyone’s password followed
the same simple formula; and that, sometimes, the computer system would be run all
day on only one employee’s password. 
Legal and Factual Sufficiency
          In his first and second points of error, appellant contends that the evidence is
legally and factually insufficient to support his conviction.
A.      Standard of Review
          In a legal-sufficiency review, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1,7 (Tex. Crim. App.
2000). In reviewing a factual-sufficiency challenge, we ask “whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury’s determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The factual-sufficiency standard “acknowledges that evidence of guilt can ‘preponderate’ in favor
of conviction but still be insufficient to prove the elements of the crime beyond a
reasonable doubt.” Zuniga v. State, 144 S.W.3d 477, 485 (Tex. Crim. App. 2004). 
Under either type of sufficiency review, the appellate court should not substitute its
own judgment for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996). The fact finder is entitled to believe all, some, or none of any
witness’s testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).
          To prove theft as alleged in the indictment and as charged to the jury, the State
had to prove that, pursuant to one scheme or a continuing course of conduct,
appellant unlawfully appropriated, by acquiring or otherwise exercising control over,
Parker’s property (specifically, cash money) having a value of $20,000 or more and
less than $100,000 with the intent to deprive Parker of the property. See Tex. Pen.
Code Ann. § 31.03(a), (e)(5).
B.      Legal Sufficiency
          In his first point of error, appellant contends that the evidence is legally
insufficient to show that he committed theft, making the following arguments in
support: (1) before Parker suspected appellant, Parker had fired another employee out
of suspicion of that other employee’s having stolen the money; (2) Parker and other
employees knew how to use the computer system and could access the cash box; (3)
no one witnessed or videotaped appellant committing theft; (4) appellant confessed
to having taken only under $10,000, not to having taken over $20,000; (5) appellant
testified that Parker hid records from the I.R.S.; and (6) appellant theorized that
Parker took the missing money for his personal use or for gambling. 
          These arguments do not consider the evidence in the required light for a legal-sufficiency review, which is in the light most favorable to the verdict. When viewed
in the appropriate light, the evidence, detailed above, shows a scheme for siphoning
off monies that eventually totaled over $50,000 and that only appellant could have
carried out because only he could delete transactions from the computer system. 
Additionally, appellant confessed to having taken some of the money, and he never
denied Parker’s accusation that he had taken over $50,000. The jury, when viewing
this evidence, could rationally have concluded that appellant committed theft in the
alleged amount. We thus hold that the evidence is legally sufficient to support the
verdict.
          We overrule appellant’s first point of error.
 
C.      Factual Sufficiency  
          In his second point of error, appellant argues that the evidence showing guilt
is against the great weight and preponderance of the evidence based on the following,
contrary testimony to which appellant testified: (1) appellant was scared that Parker
would do something to him because appellant “knew too much” about Parker’s
business practices and his alleged I.R.S. fraud; (2) appellant denied having taken
money from Parker; (3) appellant confessed to the polygraph examiner out of fear of
Parker; (4) Parker had instructed appellant to confess to having taken $50,000, and
appellant’s hesitance and his claiming to have taken a lesser amount in the videotaped
recording indicates that his confession was false; (5) no stealing had ever occurred;
(6) appellant was framed; and (7) Parker played a “constant ‘shell game’ with his
assets,” which scheme he allegedly hid from the I.R.S.Much of appellant’s challenge rests on the credibility of his testimony and the
alleged incredibility of the State’s witnesses. However, the Court of Criminal
Appeals has instructed that, in conducting a factual-sufficiency review, “[t]he
reviewing court should not substantially intrude upon the jury’s role as the sole judge
of the weight and credibility of witness testimony.” Ortiz v. State, 93 S.W.3d 79, 87
(Tex. Crim. App. 2002). The jury may simply have disbelieved appellant’s evidence
and believed that of the State, and we will not intrude on the jury’s role concerning
credibility in these circumstances. Appellant invites this Court to disregard the
general rule and to hold instead that “the State’s evidence . . . simply is not credible
enough to sustain a conviction.” We decline to do so because, “[a]s an intermediate
appellate court, we must follow binding precedent of the Court of Criminal Appeals.” 
McKinney v. State, Nos. 01-03-00565-CR, 01-03-00734-CR, 01-03-00735-CR, 2005
WL 327145, at *3 (Tex. App.—Houston [1st Dist.] Feb. 10, 2005, no pet.).
          We hold that the evidence on which appellant relies does not so undermine the
evidence supporting guilt as to render the verdict clearly wrong or manifestly unjust. 
Accordingly, we hold that the evidence is factually sufficient to support the verdict.
          We overrule appellant’s second point of error.
Ineffective Assistance of Counsel
          In his third point of error, appellant contends that he received ineffective
assistance of counsel at the guilt-innocence phase of trial because his counsel (1)
failed to object to the opinion of a lay witness, Mary Beth Smith, during cross-examination that appellant was guilty; (2) failed to ascertain, on cross-examination,
whether Smith had violated “the rule”; and (3) bolstered, by his continued cross-examination, Smith’s harmful testimony.
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct.
2052, 2064-69 (1984). Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 772, 774 (Tex. Crim. App. 1999)
(applying Strickland standard at punishment phase of non-capital trial). Appellant
must show both that (1) counsel’s performance was so deficient that he was not
functioning as acceptable counsel under the Sixth Amendment and (2) there is a
reasonable probability that, but for counsel’s error or omission, the result of the
proceedings would have been different, i.e., the error or omission was sufficient to
undermine confidence in the proceeding’s outcome. Strickland, 466 U.S. at 687-96,
104 S. Ct. at 2064-69. The constitutional right to counsel does not mean the right to
errorless counsel. See Saylor v. State, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). 
In determining whether counsel was ineffective, we consider the totality of the
circumstances of the particular case. Thompson, 9 S.W.3d at 813. 
          It is the defendant’s burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Id. A defendant must overcome the presumption
that, under the circumstances, the challenged action might be considered sound trial
strategy. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996,
no pet.). Assertions of ineffective assistance of counsel must be firmly founded in the
record. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); Gamble, 916
S.W.2d at 93. However, “in the rare case” in which the record suffices “to prove that
counsel’s performance was deficient” despite the record’s silence concerning
counsel’s strategy, “an appellate court should obviously address the [ineffective-assistance] claim . . . .” Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App.
2000). 
          Nothing in the record shows counsel’s reasons for committing the complained-of act and omissions, and appellant did not file a motion for a new trial, in which
counsel’s reasons could have been developed on the record. Appellant has thus failed
to overcome the presumption that counsel could have had acted pursuant to sound
strategy. See Gibbs v. State, 7 S.W.3d 175, 179 (Tex. App.—Houston [1st Dist.]
1999, pet. ref’d). Appellant contends that this is one of those “rare cases” in which
a record silent as to counsel’s reasoning nonetheless reveals counsel’s deficiency. 
See Robinson, 16 S.W.3d at 813 n.7. We disagree. Counsel’s actions are not such
that no reasonable trial strategy could explain them. Moreover, to the extent that
appellant’s challenge concerns counsel’s failure to inquire, on cross-examination,
whether Smith had violated the rule between the two days that she testified, the
prosecutor expressly asked the witness, on re-direct examination, whether she had
spoken with any other witnesses between the first and second times that she testified,
and she testified that she had not. Accordingly, even if we could consider counsel
deficient for this omission, no harm would flow from it.
          We hold that appellant has not carried his burden of proving ineffective
assistance of counsel.
          We overrule appellant’s third point of error. 
 
Conclusion
          We affirm the judgment of the trial court.  
 
 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. See Tex. R. App. P. 47.2(b).